**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **910 E MAIN LLC D/B/A QUARTER** | ) | **Civil Action No. 6:20-cv-00965** |
| **TAVERN, ET AL.** | ) | |
| | ) | **District Judge Robert R. Summerhays** |
| | ) | |
| **VERSUS** | ) | **Magistrate Judge Patrick J. Hanna** |
| | ) | |
| **GOVERNOR JOHN BEL EDWARDS** | ) | |
| **and H. "BUTCH" BROWNING, JR.** | ) | **JURY DEMAND** |

## SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

A.

As to its Second Amended Complaint, Plaintiffs state as follows:

B.

Plaintiffs adopt all of the exhibits of their original Complaint and First Amended Complaint by reference as though fully set forth herein.

## PARTIES

1.    The Plaintiffs are:

A.    910 E Main 33, LLC d/b/a Quarter Tavern, a limited liability company formed under the laws of the State of Louisiana with its principal office located 218 W Peter Street, New Iberia, LA 70560;

B.    Big Dan's Bar, Inc., a corporation incorporated under the laws of the State of Louisiana with its principal place of business located at 197 Hwy 15, Sicily Island, LA 71368;

C.    City Bar, Inc., a corporation incorporated under the laws of the State of Louisiana with its principal place of business located at 8401 Maurice Ave., Maurice, LA 70555;

1

D.      CKBCPB5 LLC d/b/a The Chatter Box, a limited liability company formed under the laws of the State of Louisiana with its principal office located at 10715 East 182 Frontage Road, Amelia, LA 70340;

E.      Doug McCarthy Enterprises Inc. d/b/a "501," a corporation incorporated under the laws of the State of Louisiana with its principal place of business located at 103 St. Martinique Lane, Lafayette, LA 70508;

F.      My Place Bar & Grill, L.L.C., a limited liability company formed under the laws of the State of Louisiana with its principal office located at 811 Foreman Drive, Lafayette, LA 70506;

G.      Pool Do's Sports Bar LLP, a limited liability partnership formed under the laws of the State of Louisiana with its principal office located at 615 Brashear Ave., Morgan City, LA 70380;

H.      Sandi's Anchor Lounge, L.L.C. d/b/a Da Camp, a limited liability company formed under the laws of the State of Louisiana with its principal office located at 108 Lincoln Drive, Patterson, LA 70392;

I.      SoCo Sports Bar, LLC, a limited liability company formed under the laws of the State of Louisiana with its principal office located at 414 Gallet Road, Youngsville, LA 70592;

J.      Tipsy Cajun, LLC, a limited liability company formed under the laws of the State of Louisiana with its principal office located at 1600 Ridge Road, Duson, LA 70529; and

K.      Wanous, L.L.C. d/b/a AJ's 2nd St. Pub, a limited liability company formed under the laws of the State of Louisiana with its principal office located at 1465 Evergreen Avenue, Morgan City, LA 70380.

2.      At all times material hereto, Plaintiffs were (and remain) engaged in business operations as bars, serving alcohol and/or food to the public under licensure by the State of Louisiana and local authorities. Plaintiffs adopt all of the exhibits of their original Complaint by reference as though fully set forth herein.

3.      Defendant John Bel Edwards (the "Governor") is the Governor of the State of Louisiana and is being sued in his official capacity. At all times material hereto, Governor Edwards was acting in his official capacity and under the color of state law. The claims herein are directed to the Governor's issuance and enforcement of Executive Orders unlawfully targeting Plaintiffs' ownership and use of private property.

4.      Defendant H. "Butch" Browning, Jr. (the "State Fire Marshal") is the Louisiana State Fire Marshal and is being sued in his official capacity. The claims herein are directed to the State Fire Marshal's activities to enforce the Executive Orders issued by the Governor.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction pursuant to 28 U.S.C.A. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this suit seeks to redress actions taken by Defendants, acting under the color of law, which deprived (and are still depriving) Plaintiffs of fundamental rights secured by the Constitution and laws of the United States. This Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper pursuant to 28 U.S.C.A. § 1391(b)(2) in that this District Court encompasses the area where the unlawful enforcement activities and constitutional deprivations at issue have and will continue to occur, unless enjoined, and where all, or a substantial part, of the property that is the subject of the action is situated.

## SUMMARY OF THE ACTION

7.     This matter involves claims by business owners whose livelihoods are being destroyed by the exercise of executive authority unlawfully targeting a single sector of the business community without a basis in law or a rational basis in fact. Plaintiffs seek to enjoin the threatened enforcement of executive orders that violate the Due Process, Equal Protection, and Takings clauses of the Constitution of the United States and the Constitution of the State of Louisiana.

8.     The Governor has not and cannot demonstrate a "real or substantial relation" between the closure of Plaintiffs' bars and the public health crisis. *In re Abbott*, 954 F.3d 772, 784 (5th Cir. 2020) (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 31 (1905)).

9.     First, there is no evidence directly linking Plaintiffs' bars to the COVID-19 public health emergency. To Plaintiffs' knowledge not a single COVID-19 transmission has been traced to a bar owned or operated by any of the Plaintiffs.

10.     Second, according to the Louisiana Department of Health ("LDH"), of the roughly 100,000 known COVID-19 cases when the closure order was last extended on July 23, 2020, only 454 (.45% of all cases) were "traced" to bars. *See* Exhibit "B". Moreover, of those 454 cases, approximately 100 were traced to a single location in Baton Rouge, "Tigerland," where none of the Plaintiffs do business. *See* Exhibit "C". In other words, less than one half of one percent of COVID-19 cases *may have been* transmitted by patrons at bars, with at least 99.5% transmitted from elsewhere.

11.     Thus, the Governor's own data disproves his hypothesis, that bars pose a disproportionately high risk to the general public warranting targeted restrictions. Absent more—which the Governor has not provided—the targeted closure of bars is "'beyond all question' a plain, palpable invasion of rights secured by fundamental law." *In re Abbott*, 954 F.3d at 784 (quoting *Jacobson,* 197 U.S. at 31).

12.     Although the Governor's actions may have warranted the benefit-of-the-doubt in the early days of the pandemic when little was known about the disease, there now exists an abundance of scientific data and other reliable evidence regarding geographic and demographic rates of infection, transmissions, hospitalizations, and mortality, as well as more reliable and effective medical treatment. Further, the public has become well versed in the art of social distancing, and businesses have learned to alter their environments to accommodate this practice. Simply put, although perhaps justified months ago, it is no longer sufficient to rely on hysteria, hearsay, or biased commentary as a basis to impose overly-broad, draconian restrictions on fundamental rights.

## FACTS

13.     On March 11, 2020, the World Health Organization ("WHO") declared a global pandemic in response to the spread of COVID-19, an infectious disease originating in Wuhan, China in 2019 and present in the United States by early 2020.

14.     That same day, Governor Edwards declared a statewide public health emergency under the Louisiana Health Emergency Powers Act, La. R.S. 29:760, *et seq*., as a result of the imminent, yet then-unknown threat posed to Louisiana citizens by COVID-19. *See* Proclamation No. 25 JBE 2020.

15.     On March 22, 2020, Governor Edwards enacted 33 JBE 2020 (the "Stay at Home Order") directing the people of Louisiana to stay at their homes unless taking essential trips or to travel to or from a place of employment, ordering some non-essential businesses to be closed, and placing limitations on other businesses that were allowed to remain open, amongst other guidelines.

16.     The Stay at Home Order, in part, mandated closure of pool halls, concert and music halls, adult entertainment venues, and "other similar businesses."

17.     The rationale for the mandate stated that "the extraordinary threat posed by COVID-19 has caused critical shortages of health care equipment, personal protective equipment, and possible shortages in hospital beds, throughout the state" and "without additional measures to slow the spread of COVID-19 in the state, health care facilities in parts of the state or even throughout the state are at significant risk of being overwhelmed." Proclamation No. 33 JBE 2020.

18.     Notably, the Stay at Home Order made no threat of sanctions for non-compliance. In addition, the only enforcement directive under the order was a general directive for the Governor's Office of Homeland Security and Emergency Preparedness ("GOHSEP") to exercise its statutory authority, as for all emergencies. GOSHEP has no law-enforcement authority.

19.     Although there was little evidence regarding the scope and severity of the risks posed by COVID-19, the Stay at Home Order arguably represented a rational response to avert potentially dire consequences.

20.     During the weeks that followed, more data regarding the virus became available, allowing for a more reliable assessment of the risks and the effectiveness and appropriateness of mitigation practices.

21.     On April 16, 2020, the White House released "Guidelines for Opening Up America Again," (hereafter "White House Guidelines"), which included a three-phased approach to reopening the country based on the advice of public health experts. *Guidelines for Opening Up America Again*, the White House (4-16-2020).

22.     On April 30, 2020, Governor Edwards renewed Louisiana's statewide Stay at Home Order, stating that "Louisiana does not yet meet the criteria set by the White House Coronavirus Task Force to move into Phase 1" of reopening. Proclamation No. 52 JBE 2020.

23.     Two weeks later, on May 15, 2020, the Governor issued an order moving Louisiana into Phase 1 of reopening (the "Phase 1 Order") reasoning that "since the time of the original Stay at Home order, the number of new COVID-19 cases and COVID-related hospitalizations in Louisiana have decreased, with the peak of hospitalizations occurring on or near April 13, 2020." Proclamation No. 58 JBE 2020.

24.     As part of the Phase 1 Order, which was consistent with the White House Guidelines, the Governor lifted portions of the Stay at Home Order.

25.     The criteria for re-opening businesses under the Phase I Order was tied to percentages of total occupancy "as determined by the State Fire Marshal" and "applicable guidance from the State Fire Marshal published at opensafely.la.gov."[1]

26.     However, bars without a Louisiana Department of Health ("LDH") food service permit were still considered nonessential businesses under Phase 1 and ordered to remain closed to the public.

27.     On June 5, 2020, Governor Edwards issued an order moving Louisiana into Phase 2 of reopening (the "Phase 2 Order") as Louisiana had met the White House Guidelines criteria for Phase 2. *See* Proclamation No. 74 JBE 2020.

28.     Under Sections 2(G)(1)(c) and (d) of the Phase 2 Order, bars were permitted to reopen, after nearly two and a half months of being shuttered. Bars with an approved food service permit from LDH were allowed to operate at 50% of capacity, as determined by the State Fire Marshal, along with other social distancing measures. Bars without an approved food service permit from LDH were allowed to reopen at 25% of capacity.

---

[1] *Phase 2A – Restaurants, Cafes and Coffee Shops, Bars, Nightclubs, and Micro-Breweries*, LA. OFF. OF ST. FIRE MARSHAL, 1 (July 23, 2020) https://opensafely.la.gov/DownloadFile.ashx?ID= 12&TBL=tblPubliclinks.

29.     The distinctions in businesses under the Phase 2 Order were made without a basis in scientific data or other reliable evidence.

30.     In connection with the re-opening process, LDH hired private companies to conduct "contact tracing" of COVID-19 cases. This process involves the use of callers (minimum requirements include a high school degree and basic verbal skills) working from a script. *See Contact Tracing*, LA. DEP'T OF HEALTH, http://ldh.la.gov/index.cfm/page/3957 (last visited July 28, 2020).

31.     LDH uses contact tracing data to identify the potential transmission source(s) and sites of COVID-19. LDH defines an "outbreak" as "2 or more [positive] cases among unrelated individuals that have visited a site within a 14-day time period."[2]

32.     On June 19, 2020, LDH reported an "outbreak" from a bar (or bars) in Tigerland, which reportedly occurred over Memorial Day weekend. The incident was highly publicized as nearly one-third of the LSU football players frequented Tigerland that weekend and were subsequently quarantined. LDH contends that at least 100 Tigerland patrons and staff tested positive.

33.     According to the LDH website, 454 cases of COVID-19 statewide were traced to bars, including those from Tigerland.[3] In other words, according to LDH data, only 354 cases—or .35% of all 100,000 cases—have been traced to the thousands of other bars across the state, which include the bars owned by Plaintiffs.

---

[2] *COVID-19 Outbreaks*, LA. DEP'T OF HEALTH, http://ldh.la.gov/index.cfm/page/3997 (last visited July 28, 2020).

[3] David J. Mitchell, *Tigerland Coronavirus Cluster: If You Recently Visited, You Should Self Quarantine, State Says*, THE ADVOCATE (June 19, 2020, 7:46 PM), https://www.theadvocate.com /baton_rouge/news/coronavirus/article_a00bdde0-b265-11ea-bdf1-2315f4722e57.html

34.     On July 11, 2020, in an apparent response to publicity about the Tigerland incident, the Governor issued 89 JBE 2020 ("EO 89-2020"), effective July 13, 2020 (Exhibit "D"), which mandated closure of all bars statewide for on-premises consumption, restricted indoor and outdoor "crowd sizes … to no more than 50 people" for other types of gatherings, established mandatory face covering (mask) requirements for the public, and required "all businesses and organizations" to "require all persons who enter the premises to wear a face covering" under threat of criminal sanction against *the business owner* who "fails to enforce the requirement to wear face coverings," not against the individual offender.

35.     Unlike prior orders, EO 89-2020 directed the State Fire Marshal, along with GOHSEP, "to assure compliance with this order." This dramatically heightened the level of enforcement by introducing the prospect of criminal sanctions, as the State Fire Marshal is a law enforcement officer with the "authority to investigate (including the use of warrants and weapons) and cause the arrest of individuals suspected of having violated" certain criminal laws (La. R.S. 40:1563.1). In addition, the State Fire Marshal has broad authority to "take steps that are necessary and proper to perform services as required by the state emergency operations plan" (La. R.S. 40:1563), which was triggered by the emergency declaration.

36.     Simply put, the Governor expressly directed the State Fire Marshal to use law enforcement authority to force business owners to comply with EO 89-2020 under the threat of criminal sanctions. Indeed, the State Marshal has followed that directive.[4]

---

[4] *See John Bel Edwards said Louisiana Coronavirus Cases may be Plateauing – but at a 'really high number'*, THE ADVOCATE, https://www.theadvocate.com/baton_rouge/news/coronavirus/ article_06904936-d122-11ea-ba80-37555176f8af.html (last visited July 28, 2020).

37.     Upon information and belief, the Governor issued EO 89-2020 without scientific data or other reliable evidence to establish that closing bars had a real or substantial relation to reducing hospitalizations or deaths caused by COVID-19.

38.     The Governor's stated rationale was simply that "young adults aged 18-29 years and children under 18 account for the majority of new cases since entering Phase 2" and that "this age-group['s] specific increase may reflect, in part, the effect of opening and expanding sectors related to amusement, with at least 36 known outbreaks across the state occurring in bars."

39.     On July 21, 2020, Governor Edwards announced during a press conference that he intended to extend EO 89-2020 through at least August 7, 2020.

40.     According to LDH's website, as of July 22, 2020, there were:

>    i.   2001 cases of COVID-19 traced to 202 outbreaks statewide, which equals 2% of all COVID-19 cases statewide;
>
>    ii.  454 cases of COVID-19 traced to 40 outbreaks from bars statewide, which equals .45% of all COVID-19 cases statewide; and
>
>    iii. 354 cases of COVID-19 traced to 39 outbreaks from bars not in Tigerland,[5] which equals .35% of all COVID-19 cases statewide.

41.     At that time, Plaintiffs were among the thousands of bars throughout the state from which **only .45%** of all known cases of COVID-19 **may** have been transmitted. According to the Governor's own data, 99.5% of known COVID-19 cases were transmitted from elsewhere.

42.     Following the issuance of the EO 89-2020, the State Fire Marshal and representatives of his office began an aggressive enforcement campaign designed to induce compliance through the

---

[5] The Tigerland outbreak accounts for at least 100 cases of COVID-19, which is 22% of cases traced to all bars.

threat of enforcement by contacting business owners, visiting business locations, and threatening to issue citations for non-compliance and doing so if necessary.

43.     As a result of the wide-spread publicity and threat of potential sanctions, most bars completely closed by July 13, 2020, as it was not economically feasible to remain open for to-go orders and most bars lacked a permit to operate to-go or curbside service.[6]

44.     On July 15, 2020, Attorney General Jeff Landry issued Opinion 20-0068 (Exhibit "E"), concluding that "three provisions of [EO 89-2020] - the mask mandate, the 50-person indoor/outdoor gathering limit, and the bar closure - are likely unconstitutional" and warning against enforcement. Exhibit E at 9. Regarding the bar closure mandate, the Attorney General explained:

> First, the Proclamation provides little data to support a state wide closure of a single type of business, without regard to whether the business is operating with the utmost care and a perfect record, operates exclusively with outdoor service, or operates in a geographical location with little data showing spikes related to bars. The Proclamation vaguely refers to a handful of outbreaks traced to "bars" but does not say where those outbreaks occurred and does not place the minimal data in the context of the total number of facilities that qualify as a "bar". It also only vaguely connects outbreaks by stating they "may be" related to bars based on hearsay from contact tracing. Without stating adequate data to support it, the Governor has singled out one type of business and punished hundreds of law-abiding business owners. While the data and the public health statutes may permit targeted closures of *individual* businesses where outbreaks are documented to have occurred, the Governor has no authority to discriminate against a single business type statewide in the absence of far more data to support such a draconian and arbitrary exercise of power. Moreover, suspending or threatening the business or alcohol permit of any business would likely amount to violation of due process as these permits are recognized property interests protected under the due process clause. It could also result in "constructive taking" via government regulation.

---

[6] This obstacle was re-enforced by a notice issued by the Office of Alcohol and Tobacco Control on July 23, 2020, reminding AG permit holders that "curbside services must be conducted in compliance with both state and local laws with respect to open containers" and "[b]usinesses may only offer alcoholic drinks in sealed …containers through curbside or drive thru services…subject to applicable local ordinances."

45.     Disregarding the Attorney General's warning and LDH data reflecting that bars were implicated in less than one-half of one percent of all COVID-19 cases, Governor Edwards extended the bar closure mandate on July 23, 2020 under Executive Order 96 JBE 2020 ("EO 96-2020") (Exhibit "F") (referred to collectively with EO 89-2020 as the "Bar Closure and Masks Orders").

46.     In the same order, however, the Governor allowed all other businesses to either re-open (under certain restrictions, including continuance of the mask mandate, capacity restrictions, and overall "crowd" limitation of 50 people), or—in the case of trampoline parks, arcades, fairs and festivals, children's play centers, and concert and music halls—to apply for reopening by submitting "a reopening plan with specific proposals for occupancy and sanitization to the State Fire Marshal," who could then approve re-opening.

47.     On information and belief, EO 96-2020 was issued without any basis in scientific data or other reliable evidence to support the continued targeted restriction against bars.

48.     Remarkably, on the same day the Governor continued the targeted closure of bars, he issued an "Advisory Notice" allowing video poker operations to resume. Exhibit "G".

49.     On July 26, 2020, the White House issued a "State Report" for Louisiana summarizing updated COVID-19 data and making "recommendations." Exhibit "H". The White House recommended, *inter alia*, that the State "[m]andate the use of masks in all current and evolving hot spots" and to consider closing "establishments where social distancing and mask use cannot occur, such as bars." The report does not require nor endorse the mandating of statewide restrictions untethered to scientific data, nor relieve the state of the obligation to narrowly tailor restrictions on fundamental rights.

50.     In fact, the Bar Closure and Mask Orders are not tailored to achieve social distancing—or for any reason as to bars—although social distancing is indeed possible in bars, just as in restaurants (particularly those with bars) and many other establishments where groups of patrons or "crowds" are permitted. Nor is it limited to "hot spots" based on known "outbreaks" despite an abundance of available data regarding geographic and demographic case rates.

51.     At a press conference on July 28, 2020, the Governor announced that COVID-19 cases in Louisiana are plateauing, and credited the progress to the Bar Closure and Mask Orders—based on absolutely no scientific evidence. In addition, he pointed to the White House "recommendations" to support the continued statewide closure of bars. At the same conference, the State Fire Marshal confirmed his enforcement activities, stating that he had directed 5,000 official "visits" to businesses and was issuing citations to not only enforce the mandate as to offenders, but to more broadly motivate public compliance.[7]

52.     In the months following the initial Bar Closure Order, the Governor has continued to issue a series of Executive Orders, all of which contain the same problematic language (and omissions) as the previous proclamations and are being enforced in the same manner against bars with Class A-General permits, as defined by the Louisiana Office of Alcohol and Tobacco Control ("ATC").[8]

### COUNT I – VIOLATIONS OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983

53.     Plaintiffs fully adopt the allegations set forth in paragraphs 1 through 52 above.

---

[7] *See John Bel Edwards said Louisiana Coronavirus Cases may be Plateauing – but at a 'really high number'*, THE ADVOCATE, https://www.theadvocate.com/baton_rouge/news/coronavirus/article_06904936-d122-11ea-ba80-37555176f8af.html (last visited July 28, 2020).

[8] *See* 101 JBE 2020 and 110 JBE 2020 (extending the Bar Closure Order under Phase 2); 117 JBE 2020 and 134 JBE 2020 (the Bar Closure Order under Phase 3); and 168 JBE 2020 and 209 JBE 2020 (the Modified Phase 2 Bar Closure Order).

54.     The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits states from denying any person "the equal protection of the laws."

55.     The Bar Closure and Mask Orders deprive Plaintiffs of their right to equal protection by singling out their lawful business activities and subjecting them to targeted enforcement without any rational or evidenced-based reason for such differential treatment.

56.     Allowing similarly situated industries (most similarly, restaurants with bars) and other businesses with gatherings of patrons to remain open, with the use of masks and social distancing, while categorically targeting the bar industry is a facial deprivation of equal protection and "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *In re Abbott,* 956 F.3d at 705.

57.     The threatened enforcement of the Bar Closure and Mask Orders deprives Plaintiffs of their right to equal protection.

58.     Plaintiffs seek declaratory and injunctive relief to prevent further deprivation.

## COUNT II – DECLARATORY JUDGMENT AND REQUEST FOR EXPEDITED CONSIDERATION

59.     Plaintiffs fully adopt the allegations set forth in paragraphs 1 through 58 above.

60.     This Court has authority to "declare rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201; *see also* Fed. R. Civ. P. 57.

61.     Plaintiffs are interested parties seeking declaration of their rights under the U.S. Constitution, as the Bar Closure and Mask Orders have deprived Plaintiffs of their fundamental rights and caused economic damage and harm to reputation and goodwill.

62.     In particular, Plaintiffs seek a declaratory judgment that Section 2 of EO 89-2020, and any extension thereof, is in violation of Plaintiffs' fundamental rights as guaranteed by the federal and state constitutions, as set forth above.

63.     In accordance with Fed. R. Civ. P. 57, which states that a "court may order a speedy hearing of a declaratory-judgment action," Plaintiffs request expedited consideration of their declaratory judgment action, given the nature of the ongoing violations and broad implications of the Defendants' actions.

## COUNT III – INJUNCTIVE RELIEF AND REQUEST FOR EXPEDITED CONSIDERATION

64.     Plaintiffs fully adopt the allegations set forth in paragraphs 1 through 63 above.

65.     The Court has authority under Fed. R. Civ. P. 65 to issue temporary restraining orders and preliminary injunctions.

66.     Plaintiffs seek a temporary restraining order preventing the Governor and State Fire Marshal from enforcing Section 2 of EO 89-2020, as the Governor has specifically targeted bars, which is a violation of the Fifth and Fourteenth Amendments to the U.S. Constitution as alleged herein.

67.     Under Fed. R. Civ. P. 65(b), a court may issue an ex parte temporary restraining order if the facts in "a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result" to the Plaintiffs.[9]

68.     The deprivation of a constitutionally-protected right constitutes irreparable harm. *See United States v. City of New Orleans*, CIV.A. 12-1924, 2013 WL 492362, at *4 (E.D. La. Feb. 8, 2013) ("Violations of constitutional rights constitute irreparable harm. . .") (citing *Elrod v. Burns*,

---

[9] As required by rule, a separate motion requesting a temporary restraining order and preliminary injunction is forthcoming.

427 U.S. 347, 373–374 (1976)); *Texas Democratic Party v. Abbott*, CV SA-20-CA-438-FB, 2020 WL 2541971, at \*32 (W.D. Tex. May 19, 2020) ("[T]he violation of constitutional rights for even a minimal period of time constitutes irreparable injury justifying the grant of a preliminary injunction.").

69.     The threatened enforcement of the Bar Closure and Mask Orders has and will continue to cause Plaintiffs irreparable injury, loss, and damage unless enjoined.

70.     The ban of on-premises consumption at bars and the public threats of enforcement of the Bar Closure and Mask Orders against bars has caused, and will continue to cause, irreparable harm to Plaintiffs' reputations and good will.

71.     The granting of a temporary restraining order will not disserve the public interest, as the public has no interest in arbitrary and unlawful government action.  Moreover, there is no scientific data or other reliable evidence that <u>all</u> bars in general, or Plaintiffs' bars in particular, are any more responsible for COVID-19 "outbreaks" than restaurants, grocery stores, casinos, and other businesses that are allowed to open, or public gatherings for any purpose.

72.     Plaintiffs seek expedited consideration for a preliminary and permanent injunction prohibiting the future deprivation of their fundamental rights and the violation of the U.S. Constitution as alleged herein.

73.     "A plaintiff seeking a preliminary injunction must clearly show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 457 (5th Cir. 2017).  These requirements are satisfied here.

WHEREFORE, Plaintiffs respectfully pray for the following relief:

a.  That after service and citation, Defendants be cited to appear and answer the same;

b.  That after all due proceedings, there be judgment rendered against Defendants in favor of
Plaintiffs:

    1.  Declaring Section 2 of Proclamation 89 JBE 2020 and Section 2 of Proclamation
96 JBE 2020 unlawful as applied to Plaintiffs;

    2.  Granting a preliminary and, in due course, permanent injunction enjoining
enforcement of Section 2 of Proclamation 89 JBE 2020 and Section B(2) of
Proclamation 96 JBE 2020 as to Plaintiffs; and

    3.  All other general and equitable relief appropriate in the premises.

PRAYS further for a trial by jury on all issues triable by jury.

Respectfully submitted,

**FAIRCLOTH MELTON SOBEL & BASH, LLC**

By:   */s/ Jimmy R. Faircloth, Jr.*
          Jimmy R. Faircloth, Jr. (T.A.)(La. #20645)
          jfaircloth@fairclothlaw.com
          Barbara Bell Melton
          bmelton@fairclothlaw.com (La. # 27956)
          Mary Katherine Price (La. #38576)
          kprice@fairclothlaw.com
          Richard F. Norem, III (La. #38849)
          enorem@fairclothlaw.com
          105 Yorktown Drive
          Alexandria, Louisiana 71303
          Telephone: (318) 619-7755
          Facsimile: (318) 619-7744

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I presented the above and foregoing *Second Amended Complaint* for filing and uploading to the CM/ECF system which will send electronic notification of such filing to all counsel of record.

Alexandria, Louisiana, this 7th day of January, 2021.

_____*/s/ Jimmy R. Faircloth, Jr.*_____
OF COUNSEL

18